UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-62286-CIV-COHN/SELTZER

SOCIAL LANGUAGE PROCESSING, INC.,
d/b/a SLP-ID,

      Plaintiff,

v.

MYLE OTT, JEFFREY T. HANCOCK, and
CLAIRE CARDIE,

      Defendants.

_____/

## ORDER TRANSFERRING CASE TO THE NORTHERN DISTRICT OF NEW YORK

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Amended

Complaint or, Alternatively, to Transfer to the United States District Court for the

Northern District of New York [DE 36].  The Court has considered the motion, Plaintiff's

response [DE 40], Defendants' reply [DE 42], the argument of counsel at the April 5,

2013 hearing, and is otherwise fully advised in the premises.

### I. BACKGROUND

This action arises out of Defendants' alleged misappropriation of a computer

program called Review Skeptic.  According to the Amended Complaint, "Review Skeptic

is a program that, through the use of certain algorithms and related technology, is

designed to detect fraudulent on-line reviews of products and services purportedly

written by customers."  DE 31 ¶ 18.  Review Skeptic is able to identify certain types of

reviews as false with an accuracy rate of 90% or greater.  Id. ¶ 21.  Plaintiff claims that

the program uses "a highly sophisticated and secret method of linguistic and other

analyses" to perform its designed function.  Id. ¶ 23.  The algorithm can be modified to make it effective for different industries' product reviews.  Id. ¶ 24.  Plaintiff avers that the modification of the algorithm is "dependent upon confidential data received by SLP-ID and the Defendants from businesses pursuant to agreements prohibiting the improper use and disclosure of the confidential data."  Id.  Plaintiff further claims that "[t]he modification and adaptation of Review Skeptic's technology for use in detecting false reviews in a variety of industries is not publicly known, and has been characterized by [Defendant Myle] Ott as 'certain non-public aspects of our work.'"  Id.

The technology for the prototype was developed by Defendants Myle Ott, Jeffrey T. Hancock, and Claire Cardie while they were working at Cornell University.  Id. ¶ 26; DE 36-1 ¶ 10.  According to Plaintiff, Ott claimed that he owned the Review Skeptic algorithm as of May 2012.  DE 31 ¶ 78.  In May 2012, Hancock met Louis Gerber, an entrepreneur and businessman who, after speaking with Hancock, became interested in the commercialization of Review Skeptic.  Id. ¶¶ 27-29; DE 36-1 ¶¶ 6-9.  Plaintiff claims that Gerber spoke with Hancock about making Review Skeptic marketable, and then using Plaintiff to market it.  DE 31 ¶ 29.  Plaintiff further alleges that, on June 11, 2012, Defendants agreed that they would transfer their rights in Review Skeptic to Plaintiff in exchange for a 50% equity position in the company.  Id. ¶ 33.  According to the Amended Complaint, Plaintiff then issued stock worth 20% of the company to Hancock, 10% to Cardie, and 10% to Ott, with an additional 10% going to Ott once he completed his studies and began working for Plaintiff full-time.  Id. ¶ 34.  The stock was allegedly sent to Defendants in one envelope addressed to Hancock on June 18, 2012. Id.  Plaintiff avers that Hancock became Plaintiff's Chief Science Officer, Ott took on the

2

role of Chief Technology Officer, and Cardie became an Advisory Board Member.  Id.  ¶
54.  Gerber is Plaintiff's CEO.  Id.  ¶ 14.  Each of them were identified in these roles on
the corporate website.  Id.

    In reliance on Defendants' agreement to transfer Review Skeptic to Plaintiff,
Gerber began approaching prospective customers who might be interested in the
product.  Id. ¶ 56.  Among the customers that expressed interest in the program were
Direct Brands, Inc. ("Direct Brands"), and Internet Brands, Inc. ("Internet Brands"),
which owns ApartmentRatings.com, among other websites.  Id.  Direct Brands is a
Delaware corporation with its principal place of business in New York, while Internet
Brands is a Delaware corporation with its principal place of business in California.
See DE 36-13 at 2; DE 36-14 at 2.  On or about June 25, 2012, Gerber, acting on
behalf of Plaintiff, signed a Non-Disclosure Agreement with Internet Brands.  DE ¶ 61.
The agreement provided that Internet Brands would disclose confidential information to
Plaintiff in connection with Internet Brands' evaluation of Plaintiff's product.  Id.  The
agreement further stated that Plaintiff must treat the information as confidential, and
that the information was not to be used to benefit third parties.  Id. ¶¶ 61-62.  On or
about July 20, 2012, Gerber signed a Confidentiality Agreement with Direct Brands,
which provided for the disclosure of Direct Brands' confidential information to Plaintiff as
part of the parties' business arrangement.  Id. ¶ 64.  Plaintiff alleges that, pursuant to
the above-referenced agreements, Internet Brands and Direct Brands each submitted
confidential information to Plaintiff so that Plaintiff could modify Review Skeptic to
perform the applications required by those firms.  Id. ¶ 65.

    Then, on August 26, 2012, Hancock informed Gerber that Defendants had

3

decided to terminate their relationship with Plaintiff, and to convert Review Skeptic and other programs under development to their own use.  Id. ¶ 90.  On August 30, 2012, Plaintiff's counsel emailed Defendants, advising them that they had breached their fiduciary duties to Plaintiff.  Id. ¶ 90.  Defendants did not respond to the email.  Id.  On September 2, 2012, Gerber emailed ApartmentRatings.com about the situation.  A representative of Internet Brands informed Gerber that Ott had furnished them with the program that was developed using the confidential data that Plaintiff had obtained from Internet Brands.  Id. ¶ 92.  On October 9, 2012, Plaintiff's counsel "'formally request[ed] a response from ApartmentRatings.com as to whether it [was] using Review Skeptic's property. . . .'"  Id. ¶ 94 (quoting DE 31-1 at 37).   ApartmentRatings.com did not respond.  Id.

On November 20, 2012, Plaintiff filed this action against Ott, Hancock, and Cardie.  See DE 1.  On January 22, 2013, Defendants moved to dismiss the Complaint or transfer venue to the Northern District of New York.  DE 21.  On February 13, 2013, the Court denied Defendants' motion as moot in light of Plaintiff's filing its Amended Complaint [DE 31].  See DE 32.  In the Amended Complaint, Plaintiff brings the following claims against all Defendants: (1) breach of fiduciary duty and duty of loyalty; (2) misappropriation of trade secrets, pursuant to the Florida Uniform Trade Secrets Act, Florida Statutes § 688.001, *et seq.* ("FUTSA"); (3) tortious interference with SLP-ID's contractual relations and prospective economic advantage; (4) unjust enrichment; and (5) civil conspiracy.  In the instant motion, Defendants move to dismiss the Amended Complaint for lack of personal jurisdiction over Defendants, as well as for failure to state a claim.  Alternatively, they move to transfer this action to the Northern

4

District of New York.  Plaintiff opposes the motion in all respects.  As described below, the Court finds that transfer of venue is the appropriate remedy in this case.  As a result, the Court need not reach the question of whether it has personal jurisdiction over Plaintiff's claims against Defendants.  See Leach v. Peacock, No. 2:09cv738-MHT, 2011 U.S. Dist. LEXIS 31779, at *4-5 (M.D. Ala. Mar. 25, 2011) (noting that "[i]f venue is improper, the court need not reach the question of whether it has personal jurisdiction over [the plaintiffs'] claims.").  ; see also City Partners, Ltd. v. Bradford Co., 484 F. Supp. 538, 539 (S.D. Fla. 1980) (finding that "[a] District Court lacking personal jurisdiction may transfer a case . . . under 28 U.S.C. § 1404(a)").

## II. DISCUSSION

Title 28 U.S.C. § 1404(a) provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a). Section 1404 gives the district courts discretion to "adjudicate motions for transfer according to an individualized case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  To determine whether transfer is appropriate here, the Court must determine first, whether Plaintiff could have brought this action in the Northern District of New York, and second, whether the convenience of parties and witnesses and the interest of justice warrant transfer to New York.  See Thermal Techs., Inc. v. Dade Serv. Corp., 282 F. Supp. 2d 1373, 1376 (S.D. Fla. 2003).

## A. Plaintiff Could Have Brought This Action
## in the Northern District of New York

"An action 'might have been brought' in a proposed transferee court if that court has jurisdiction over the subject matter of the action, if venue is proper there, and if the defendant is amenable to process issuing out of the transferee court." Windmere Corp. v. Remington Products, Inc., 617 F. Supp. at 8, 10 (S.D. Fla. 1985); see also Jewelmasters, Inc. v. May Dep't Stores Co., 840 F. Supp. 893, 894 (S.D. Fla. 1993) (finding that a case 'might have been brought' in districts with proper venue, subject-matter jurisdiction, and personal jurisdiction over the claims).  Here, these factors indicate that the case could have been brought in the Northern District of New York. First, because subject-matter jurisdiction in this case is based in diversity, a district court in New York would have the same subject-matter jurisdiction over the action as this Court does.  Second, venue is proper in New York because all Defendants reside in the Northern District, specifically, in Ithaca.  See DE 31 ¶¶ 11-13; see also 28 U.S.C. § 1391(a)(1) ("a civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."). Third, because they reside in Ithaca, Defendants are amenable to service of process issued by the Northern District of New York.

Plaintiff does not contest that the action could have been filed in the Northern District of New York.  See DE 40 at 25-26 (arguing primarily that the convenience of the parties and Plaintiff's choice of forum do not favor transfer).  Therefore, the Court finds that Plaintiff could have brought this action in Northern District of New York, in accordance with § 1404(a).  The only remaining question to be decided is whether, on

6

balance, the convenience of the parties and witnesses, and the interest of justice weigh in favor of this Court retaining this case or transferring it.  See 28 U.S.C. § 1404(a).

### B. The Factors Weigh in Favor of Transfer

To determine whether to transfer an action to another forum under §1404(a), courts evaluate the following factors: (1) convenience of the parties; (2) convenience of the witnesses; (3) relative ease of access to sources of proof; (4) availability of process to compel presence of unwilling witnesses; (5) cost of obtaining presence of witnesses; (6) plaintiff's choice of venue; and (7) the public interest.  See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1946); Windmere Corp. v. Remington Prods., Inc., 617 F. Supp. 8, 10 (S.D. Fla. 1985).  Upon consideration of the facts in this case, the Court concludes that, on balance, these factors weigh in favor of transfer.

The first factor, regarding convenience of the parties, weakly favors keeping the action here.  While Plaintiff's CEO and general counsel are located in Florida, all Defendants reside in the Northern District of New York.  However, as Plaintiff notes, the trial is scheduled for the summer, and as academics, Defendants may be freer to travel during the summer.

The next four factors — convenience of the witnesses, relative ease of access to sources of proof, availability of process to compel presence of unwilling witnesses, and cost of obtaining presence of witnesses — strongly favor transfer.  The Court notes that the convenience of the witnesses and the Court's ability to compel process are generally given substantial weight in transfer decisions.  See Gonzalez v. Pirelli Tire, LLC, No. 07-80453-CIV-MARRA/JOHNSON, 2008 U.S. Dist. LEXIS 13492, at *6 (S.D. Fla. Feb. 22, 2008).  In this case, the only potential witnesses who live in Florida are

7

Plaintiff's CEO and Plaintiff's general counsel.  Plaintiff points to no other forms of evidence, other than emails between Mr. Gerber and various parties, that might be located in Florida.  On the other hand, several witnesses and potential sources of evidence are located in New York.  Direct Brands has its principal place of business in New York, and thus is subject to compulsory process there.  See DE 36-13 at 2. Cornell University — including all of its students, employees, and documents related to the development and ownership of Review Skeptic — is in the Northern District, and amenable to process there.  See DE 31 ¶ 17.  Plaintiff points out that three of its corporate officers reside in Pennsylvania, Ohio, and Texas, respectively, and argues that it would be easier for them to get to Florida than to New York.  The Court fails to see how it would be easier for an individual in Pennsylvania or Ohio to travel to this District than to the Northern District of New York.  Thus, the Court finds that this set of factors clearly favors transfer.

The sixth factor, plaintiff's choice of venue, weighs weakly against transfer because Plaintiff chose to file this action in the Southern District of Florida.  However, a plaintiff's "choice of forum is not controlling but is merely one of the factors to be considered by the court in determining the most convenient forum for the case." Windmere Corp., 617 F. Supp. at 10.  Where, as here, "the operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration."  Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) (quoting Garay v. BRK Elec., 775 F. Supp. 1010, 1011 (M.D. Fla. 1991)).  Plaintiff has not shown that any potential witness, other than its CEO and

general counsel, resides in the Southern District.  Nor has Plaintiff pointed to any evidence that would be difficult to transport to New York.

Finally, the seventh factor — the public interest — favors transfer for two reasons.  First, New York has a much greater local interest in the outcome of this dispute than Florida does.  While Plaintiff's CEO resides here and Plaintiff is incorporated here, it is unclear from the record whether Plaintiff has any other business ties to Florida.  In contrast, New York has a substantial interest in adjudicating this case: all Defendants reside in New York; the product in dispute was developed in New York, and is purportedly still owned by a university in New York; and some of the allegedly confidential information at issue was originally obtained from a corporation with its principal place of business in New York.  See Thermal Techs., 282 F. Supp. 2d at 1378-79 (finding that the district where "the bulk of th[e] activity clearly occurred, and was directed by persons" was the district with the stronger public interest in trying the dispute).  Additionally, Defendants assert that New York law would likely apply in this action.  See Whitney Bank v. Swearingen, No. CA 12-0198-CG-C, 2012 U.S. Dist. LEXIS 83351, at *21-22 (S.D. Ala. May 4, 2012) (citing "a forum's familiarity with the governing law" as one factor to consider in transfer decisions).  Florida choice-of-law rules provide that the principal location of a defendant's unlawful conduct will usually be given the greatest weight in determining choice of law in actions concerning misappropriation of trade secrets.  See Default Proof Credit Card Sys., Inc. v. State St. Bank & Trust Co., 753 F. Supp. 1566, 1571 & n.3 (S.D. Fla. 1990).  In this case, Defendants' allegedly unlawful acts principally took place in New York, and, as described above, none of the alleged conduct took place in Florida.  Therefore, and

9

without prejudice to any subsequent determination on this issue, it appears likely that New York law would govern this action. Accordingly, the Court concludes that the relevant factors, on balance, weigh in favor of transferring this action to the Northern District of New York.

## IV. CONCLUSION

Therefore, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Amended Complaint or, Alternatively, to Transfer to the United States District Court for the Northern District of New York [DE 36] is **GRANTED in part** as follows:

1.  The above-referenced action is hereby **TRANSFERRED**, pursuant to 28 U.S.C. § 1404(a), to the United States District court for the Northern District of New York.

2.  The Clerk of Court shall transmit this cause and all the records pertaining thereto to the Clerk of Court of the Northern District of New York.

3.  All other pending motions are **DENIED AS MOOT**, and the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of April, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF